**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| **In re:** | |
| | Case No.: 06-31766 |
| **JEMSEK CLINIC, P.A.** | Chapter 11 |
| | Judge J. Craig Whitley |
| Debtor. | |
| | |
| **In re:** | |
| | Case No.: 06-319866 |
| **JOSEPH GREGORY JEMSEK** | Chapter 11 |
| | Judge J. Craig Whitley |
| Debtor. | |
| | |
| **BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA,** | |
| | |
| Plaintiff, | |
| Counterclaim Defendant and | Adversary Proceeding |
| Counterclaim Plaintiff, | No. 07-03006 |
| | (consolidated with |
| v. | No. 07-03008) |
| | |
| **JEMSEK CLINIC, P.A. and JOSEPH G. JEMSEK, M.D., an individual** | |
| | |
| Defendants, | |
| Counterclaim Plaintiffs and | |
| Counterclaim Defendants. | |

This matter is before the court on a motion for leave to appeal an entry of monetary and non-monetary sanctions against Blue Cross and Blue Shield of North Carolina ("Blue Cross") in the United States Bankruptcy Court for the Western District of North Carolina, the Honorable J. Craig Whitley presiding, in the above-captioned Adversary Proceeding

[docket #2]. Specifically, Blue Cross and Blue Shield of North Carolina ("Blue Cross") seeks the grant of an interlocutory appeal of the Bankruptcy Court's entry of sanctions dismissing all eleven of Blue Cross's claims against defendants Joseph Gregory Jemsek and Jemsek Clinic, P.A., and imposing almost $1,300,000 in defendant's attorneys fees and costs on Blue Cross. On July 25, 2011, Blue Cross filed a notice of appeal from the Bankruptcy Court's entry of sanctions. Blue Cross simultaneously filed a motion for leave to appeal the order, arguing that this court should review the appeal despite its interlocutory nature. For the following reasons, the court will deny Blue Cross's motion for leave to appeal.

I. **The Underlying Bankruptcy Action and the Sanctions Order Against Blue Cross**[1]

A. **The Adversary Proceeding in the Western District of North Carolina Bankruptcy Court**

The defendant debtor Joseph Gregory Jemsek in the underlying Adversary Proceeding is a medical doctor whose right to practice medicine was suspended because he had been treating purported Lyme disease patients via long-term intravenous antibiotics administered through indwelling venous access devices (i.e., infusion ports), when the standard course of treatment suggested, at most, oral antibiotics. On September 18, 2006, Blue Cross filed a lawsuit in state court against defendant Jemsek and his professional services corporation, the Jemsek Clinic, P.A., to recover $17,000,000 in payments for the alleged submission by

---

[1] The court is merely reciting Blue Cross's version of the underlying facts and claims. The court recognizes that defendants oppose Blue Cross's characterization of the facts, as well as the underlying merits and specific questions to be presented on appeal.

defendants of improper and fraudulent claims related to treatments for Lyme disease. In response, defendants filed for bankruptcy in the United States District Court for the Western District of North Carolina under Chapter 11 of the Bankruptcy Code. Blue Cross's state court lawsuit was removed to the Bankruptcy Court and became the above-captioned Adversary Proceeding. Defendants alleged various counterclaims against Blue Cross. The parties began a long and costly discovery process.

B.    **The *Love* Class Action Settlement in the Southern District of Florida**

*Love v. Blue Cross & Blue Shield Association*, No. 1:03-cv-21296-FAM (S.D. Fla. Apr. 19, 2003) ("*Love*"), was a nationwide class action brought in the United States District Court for the Southern District of Florida in 2003 on behalf of health care providers. The *Love* class action alleged that various Blue Cross entities wrongfully delayed, diminished, and denied properly submitted requests for payment based on cost instead of medical necessity. *See Thomas v. Blue Cross & Blue Shield Ass'n*, 333 F. App'x 414 (11th Cir. 2009).

In April 2007, the *Love* plaintiffs entered into a settlement agreement with Blue Cross and Blue Shield Association and many of its licensees, including Blue Cross. The settlement and final judgment contained an injunction barring class members from prosecuting against the settling defendants any claims released under the settlement agreement. Defendants Joseph Gregory Jemsek and Jemsek Clinic, P.A. were members of the putative class in *Love* by virtue of failing to opt out of the class; thus, the settlement agreement barred the counterclaims brought by defendants against Blue Cross in the above-captioned Adversary Proceeding. Judge Moreno, the presiding judge in the *Love* class action, preliminarily

approved the settlement on May 31, 2007. On April 20, 2008, Judge Moreno entered an Order Approving Settlement and Directing Entry of Final Judgment ("Settlement Order").

Despite that the *Love* class action had been proceeding since 2003, and Blue Cross had actively been defending that action during the same time that it was conducting protracted discovery and litigation in the Adversary Proceeding in this matter, Blue Cross failed to inform either defendants or the Banktruptcy Court of the *Love* litigation and its possible effect on defendants' counterclaims in the Adversary Proceeding until 2008. On March 31, 2008, in a submission to the Bankruptcy Court seeking a stay of the Adversary Proceeding pending an appeal of a discovery order, Blue Cross notified the Bankruptcy Court and defendants for the first time of the preliminary settlement and settlement injunction in *Love*. Shortly thereafter, Blue Cross, through counsel, requested that defendants dismiss their counterclaims in the Adversary Proceeding. The Florida court thereafter entered on April 20, 2008, the Settlement Order containing the final release and permanent injunction. Defendants disputed that they had released their counterclaims, and Blue Cross thereafter filed a motion before Judge Moreno, the presiding judgment in the *Love* class action, seeking a determination of whether defendants' counterclaims in the Adversary Proceeding were enjoined by the Settlement Order in the Florida action.

By order entered September 4, 2008, Judge Moreno ultimately concluded that seven of nine of defendants' counterclaims had been released under the Settlement Agreement in the Florida action. The court ordered defendants to withdraw the seven counterclaims and the supporting factual allegations in the Adversary Proceeding in this matter. Defendants

appealed to the Eleventh Circuit Court of Appeals, which affirmed the Florida court's decision. *Thomas*, 333 F. App'x at 422.

On September 22, 2010, after briefing by the parties, the Bankruptcy Court for the Western District North Carolina determined that Blue Cross had committed sanctionable conduct for waiting so long to inform the court and defendants of the *Love* settlement and its specific release and injunction provisions. The Bankruptcy Court determined that Blue Cross's conduct caused the loss defendants' counterclaims and caused defendants to incur considerable legal fees and expenses. As sanctions, the Bankruptcy Court ultimately dismissed all eleven of Blue Cross's claims against defendants and entered monetary sanctions against Blue Cross in the amount of $1,291,415.60. Blue Cross now seeks to appeal from the Bankruptcy Court's sanctions order.

**II.     Analysis–Whether The Court In its Discretion Should Allow Blue Cross to Appeal the Sanctions Order of the Bankruptcy Court**

Jurisdiction in this court to grant an interlocutory appeal from the United States Bankruptcy Court is found in 28 U.S.C. § 158. Section 158 does not provide direct guidance as to when leave to appeal interlocutory orders should be granted. *Charlotte Commercial Group, Inc. v. Fleet Nat'l Bank*, No. 01-52684C-11W, 01-6044, Civ. 1:02CV00343, 2003 WL 1790882, at *1 (M.D.N.C. Mar. 13, 2003). Section 158 does, however, provide that bankruptcy appeals "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c)(2). Therefore, courts apply an analysis similar to that employed by district courts in certifying

interlocutory review by the circuit court of appeals under 28 U.S.C. § 1292(b).[2]  Under Section 1292(b), leave to file an interlocutory appeal should be granted only when (1) the order involves a controlling question of law, (2) as to which there is a substantial ground for a difference of opinion, and (3) immediate appeal would materially advance the termination of the litigation.  All three requirements must be satisfied to grant leave to appeal an interlocutory order.

As to the first requirement, the Fourth Circuit has defined a controlling question of law as one that presents a "narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes."  *Fannin v. CSX Transp., Inc.*, No. 88-8120, 1989 WL 42583, at *5 (4th Cir. Apr. 26, 1989).  Blue Cross states that it presents the following issues on appeal: (1) whether Blue Cross had a duty to disclose in the Adversary Proceeding the existence of the *Love* settlement and its terms before the time that the settlement was entered by the Florida court as a final judgment, when defendants had already received constitutionally-sufficient notice of the *Love* settlement; (2) whether, if Blue Cross had such a duty of disclosure in the Adversary Proceeding, its production of documents in discovery that disclosed the existence of the *Love* case satisfied such duty of disclosure; (3) whether, if Blue Cross had a duty of disclosure and did not satisfy such duty, its conduct was sanctionable by the Bankruptcy Court; (4) whether, if its conduct was sanctionable, the dismissal of every one of Blue

---

[2]  Blue Cross does not attempt to argue that its appeal falls within the three requirements of Section 1292(b).  Rather, Blue Cross cites to the collateral order doctrine under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), in contending that the sanctions order is immediately appealable.  As Blue Cross recognizes, however, sanctions orders related to discovery are not collateral orders, but may be appealed only after final judgment.  *Cunningham v. Hamilton County*, 527 U.S. 198, 209 (1999).  Furthermore, the court does not agree that this case falls within a narrow exception to the general rule that sanctions orders related to discovery are not collateral orders.  Thus, the court does not agree with Blue Cross that the facts of this case fall within the exception recognized in *Riverhead Savings Bank v. National Mortgage Equity Corp.*, 893 F.2d 1109, 1113-15 (9th Cir. 1990).

Cross's eleven claims against defendants was an appropriate sanction; and (5) whether, if its conduct was sanctionable, the entry of $1,291,415.60 in monetary sanctions in addition to the dismissal of Blue Cross's claims was an appropriate sanction.

As to the first requirement under Section 1292(b), the above-stated issues do not present narrow questions of pure law. Here, the Bankruptcy Court based its sanctions order on a meticulous review of the facts, particularly Blue Cross's conduct related to its non-disclosure of the *Love* class action. Accordingly, because the question of law presented in this appeal is "grounded in the specific facts of the case, and cannot be divorced from [those] facts," it does not present a narrow question of pure law. *Brooks v. Farm Fresh, Inc.*, 759 F. Supp. 1185, 1198 (E.D. Va. 1991). Furthermore, the issues presented on appeal by Blue Cross are not completely dispositive of the litigation as a whole, since defendants have two remaining counterclaims in the litigation.

As to the second requirement under Section 1292(b)–whether the Bankruptcy Court's order presents an issue over which there is a substantial ground for a difference of opinion–the imposition of sanctions based on Blue Cross's non-disclosure is simply not an issue over which there is a substantial ground for a difference of opinion. In other words, there is not significant disagreement among courts over what the law is regarding Rule 26's discovery and disclosure rules under Rule 26 of the Federal Rules of Civil Procedure. Nor has Blue Cross shown that there is a substantial ground for a difference of opinion as to whether Blue Cross was required to disclose the *Love* class action to defendants where defendants had received notice of the right to opt out of the putative class. In sum, the second requirement under Section 1292(b) is not met.

Finally, as to third requirement–whether immediate review will materially advance the termination of the litigation–as noted, defendants still have two remaining counterclaims against Blue Cross in the Adversary Proceeding. Regardless of whether this court grants Blue Cross's

request for an immediate appeal, a trial on defendants' counterclaims will still be necessary. Thus, an immediate appeal of the Bankruptcy Court's order will not materially advance the termination of this litigation.

In sum, for the reasons stated herein, the court will deny Blue Cross's motion for leave to appeal the interlocutory order of the Bankruptcy Court.

### III. Conclusion

**IT IS, THEREFORE, ORDERED** that Blue Cross's motion for leave to appeal the sanctions order entered by the Bankruptcy Court [docket #2] is hereby **DENIED**.

Signed: August 30, 2011

Max O. Cogburn Jr.
United States District Judge